UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-51580 |
| PORT AGGREGATES, INC., | CHAPTER 11 |
| *DEBTOR* | JUDGE ROBERT SUMMERHAYS |

**EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 364(c) AND 364(d), (II) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c); (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**

**NOW INTO COURT**, through undersigned counsel, come the above-captioned debtor-in-possession ("Port Aggregates" or the "Company"), who file this *Emergency Motion for an Order (I) Authorizing the Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 364(c) and 364(d), (II) Authorizing the Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c); (III) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* (the "Motion"). In support of the Motion, the Company respectfully submits:

**JURISDICTION AND PROCEDURAL BACKGROUND**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estate; and therefore, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On December 19, 2014 (the "Petition Date"), Port Aggregates filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-referenced case (the "Case").

4. Since the Petition Date, the Company has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. As of the Date of this Motion, no official committee of unsecured creditors has been appointed.

6. On December 22, 2014, Port Aggregates filed that certain *Motion by the Debtor for the Appointment of an Examiner by the US Trustee Pursuant to 11 U.S.C. § 1104(c)* (Docket No. 10).

7. Contemporaneously with filing this Motion, the Company has filed its *Request for Emergency Consideration of Certain "First Day" Matters*.

## STATEMENT OF FACTS

**A. Business Overview**

8. Brothers Andrew Lee Guinn, Sr., James P. Guinn, Timothy J. Guinn, Sr., and Loyd Guinn, Jr. began business in Southwest Louisiana in 1979 as Guinn Bros., Inc. Port Aggregates, Inc. was later formed as a privately-owned Louisiana C corporation and converted in 1996 to a privately held Louisiana Sub S corporation when the below described stock was issued.

9. The business of Port Aggregates and its subsidiaries[1] involves: the operation of redi-mix concrete plants and the sale of concrete and pre-cast and concrete products; the sale, hauling and delivery of construction aggregates; the operation of deep water docking facilities;

---

[1] The Company's subsidiaries include PAI Material Handling, LLC, PAI Pre-Cast LLC, and PAI Ready-Mix LLC (collectively, the "Subsidiaries").

GAMDE: 2194758

the sale and barging of limestone; and the operation of sand and dirt pits. The Company and its affiliates currently operate some 29 facilities in Southwest Louisiana serving all types and sizes of clients, and construction projects. Port Aggregates estimates revenues for fiscal year 2014, on a consolidated basis of $70-80 million. The primary business of the Company itself includes: (i) the purchase and sale of construction aggregates (limestone primarily), both to its Subsidiaries but mostly to third party clients; (ii) providing certain administrative services to its Subsidiaries; and (iii) overseeing the growth possibilities of the Company enterprise.

**B.     Whitney Loan Structure**

10.     The Company is party to that certain Commercial Business Loan Agreement for Lines of Credit and Term Loans dated August 20, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement," and with related documents, the "Loan Documents"), by and among Whitney National Bank, as Lender ("Whitney" or "Whitney Bank"), and Port Aggregates, Inc., PAI Ready Mix LLC, and PAI Material Handling LLC, as Borrowers under the Loan Agreement (the "Secured Credit Facility").

11.     The Secured Credit Facility consists of certain term loans evidenced by Whitney Bank's promissory notes (the "Term Loans") and a $7 million (maximum limit) revolving line of credit ("Line of Credit") that accrues interest at a current annual rate of 1.826%. The Line of Credit matured on August 4, 2014 and was subsequently renewed by the Company pursuant to a promissory note that is effective through August 15, 2015. The Company is either maker or guarantor of the Term Loans. Where the Company and the subsidiaries are not direct makers of the Term Loans, each acts as a guarantor. The Term Loans represent borrowings on real property, equipment, plants and facilitates, and vehicles (certain of the Term Loans represent "take out" financing related to the purchases of assets).

12. The Secured Credit Facility is secured by liens (the "Pre-Petition Lender Lien") on substantially all of the assets of the Company and Subsidiaries as well as by certain guaranties executed by the Class A shareholders (the "Pre-Petition Guaranties", and together with the Pre-Petition Lender Liens, collectively the "Pre-Petition Collateral"). As of the Petition Date, the principal amount outstanding under the Line of Credit was approximately $2.239 million and the principal amount outstanding under the Term Loans was approximately $8.122 million. The Company has financing with other lending parties, related to vehicle and equipment purchases and/or financed leases of equipment. **Nothing in this Motion or within the relief requested is intended to affect the loans, security interests, lien positions or rights of these other third party lender/loan/financing parties**.[2]

C. **Events Leading to This Bankruptcy Case**

13. In February of 2014, Timothy J. Guinn, James P. Guinn, William R. Guinn, Ellen Guinn Martel, Philip L. Guinn, and Nathaniel Stuart Guinn, Individually, and as Trustee For The Caroline T. Guinn Trust, The James Paul Guinn, Jr. Trust, The Joel M. Guinn Trust, The Laura Katherine Guinn Trust, The Cristian J. Guinn Trust And The Anna C. Guinn Trust instituted a *Petition For Derivative Action* against Port Aggregates, Inc., Trico Construction, Inc., Southwest Materials, Inc, Andrew Guinn, Sr., Andrew Lee Guinn, Jr., Adam G. Guinn, Dawn Guinn Trahan, Holly Guinn Durkes, Jo Ann Colligan, and James Maddox, Sr., which lawsuit is docketed as case no. C-108-14, 31st Judicial District Court, Parish of Jefferson Davis, State of Louisiana (the "State Court Action").

---

[2] Attached hereto as **Exhibit "A"** is a summary of the UCC-1 Financing Statements and Mortgages that undersigned counsel has been able to obtain through searches of mortgage records and the Louisiana Secretary of State central directory. This listing is not meant to be a statement of the position of the Company as to the complete listing of the recorded security interest documents in favor of Whitney, and this listing will be updated with additional information as it becomes available.

14. The plaintiffs in the State Court Action filed a *First Amended, Supplemental and Restated Petition for Derivative Action* in March of 2014 which, among other things, added Southern Bar-B-Que Sauce, Inc. as a co-defendant.

15. The plaintiffs in the State Court Action also sought the appointment of a receiver for Port Aggregates by filing, in the State Court Action, an *Application For Appointment of a Receiver and For Interim Temporary Receiver* (the "First Receiver Application") in April of 2014. The First Receiver Application was dismissed on July 3, 2014, by Order on Joint Motion for Mediation to Dismiss Without Prejudice the Application for Receivership to Cancel Notice of Lis Pendens and to Fix Trial Date on the Derivative Action.

16. In December of 2014 the plaintiff's in the State Court Action once again urged the state court for the appointment of a receiver of Port Aggregates by filing a *Restated, Amended and Renewed Application For Appointment of Receiver and Interim Temporary Receiver* (the "Second Receiver Application").

17. The hearing on the Second Receiver Application was scheduled for January 6, 2015.

18. The purported basis for the State Court Action and the request for appointment of a receiver are allegations of mismanagement, self-dealing, and breaches of fiduciary duty by the defendants in the State Court Action. These allegations are denied and the Company denies any impropriety with respect to its operations as regards the Company or the defendants. As mentioned in other pleadings filed with this Court, the Company seeks the appointment of an examiner to investigate concerns of the Company regarding the prior management and control of the concrete operations by certain of the Plaintiffs in the State Court Action. As a result of the application for appointment of a receiver the Company's lender, Whitney Bank issued a notice of

GAMDE: 2194758

Page 5 of 18

14-51580 - #18  File 12/26/14  Enter 12/26/14 12:59:44  Main Document  Pg 5 of 18

default on the Secured Credit Facility. Otherwise, the Company was not in default of any of its obligations to Whitney Bank (or other creditors) prior to the commencement of this Case. However, as the default could not be cured, the Company determined that filing this Case was necessary.[3]

## RELIEF REQUESTED

### Port Aggregates' Need for Post-Petition Financing and Use of Cash Collateral

19. Port Aggregates seeks authority to maintain and continue the current Secured Credit Facility[4] with Whitney Bank, and the authority to use its cash collateral within the confines and workings of the Secured Credit Facility, particularly the Line of Credit. Use of the Line of Credit prior to the commencement of this Case operated generally as follows: The Company and its Subsidiaries operate using a series of Zero Balance Accounts ("ZBA") to facilitate use of the Line of Credit. The cash management system is more fully described within the MOTION FOR AN ORDER (I) APPROVING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF PRE-PETITION BANK ACCOUNTS AND BUSINESS FORMS, AND (III) WAIVING THE REQUIREMENTS OF BANKRUPTCY CODE § 345(b) (ECF Doc. 13) ("Cash Management Motion"). Use of the ZBA account system works hand in hand with the use by the Company of its cash collateral. As set forth within the Cash Management Motion, the Company uses its cash to fund operations out of the Company Operating and Special Accounts, and also the Company uses the Operating Account as a flow through account by which it provides funding if necessary to the Subsidiaries

---

[3] Prior to the emergency hearing on the "First Day Motions," Port Aggregates intends to file the Declaration of Andrew Lee Guinn, Sr. for a more detailed discussion of the factual background and circumstances of the operations of the Company and its Subsidiaries and the circumstances leading up to the filing of this chapter 11 case.

[4] For ease of understanding and continuity the "DIP facility" and "DIP financing" being requested herein will be referred to by the prepetition reference as Secured Credit Facility, and as set forth below, with respect to the post-petition references as the Post-Petition Secured Credit Facility..

GAMDE: 2194758

**Page 6 of 18**

14-51580 - #18 File 12/26/14 Enter 12/26/14 12:59:44 Main Document Pg 6 of 18

by means of draws upon the Line of Credit. All of the ZBA accounts are swept daily (the Subsidiaries' accounts swept to the Company Operating Account and the Company Operating Account swept to pay down the Line of Credit). As discussed in the Cash Management Motion the transfers to and from the Company and the Subsidiaries are accounted for through due to/due from entries on the books of the companies. The "sweeps" result either in a pay down on the Line of Credit or a draw against the Line of Credit, depending upon the amount of checks outstanding against the cash deposits from operations into the Operating ZBA accounts.

20. Because the Company and the Subsidiaries were operating in accordance with the Secured Credit Facility and the Line of Credit as of the filing of this Case, and because of the requirements of sections 361, 362 and 363 of the bankruptcy code—that the Company provide adequate protection of the security interests of Whitney and not use cash collateral without Court approval—the filing of the Case interrupted the operations of the Company and its Subsidiaries. The notice of default issued by Whitney, combined with the filing of the Case generated the right on behalf of Whitney to suspend further draws under the Line of Credit and to freeze the operating accounts of the Company and Subsidiaries (of course, the notice of default gave Whitney the same rights). Thus, the Company was faced with two basic alternatives: (i) to institute bankruptcy cases for the Company and the Subsidiaries, forego the Line of Credit and move for authority to use the debtors' cash collateral without further advances by Whitney under the Line of Credit (costly and probably would have created an adversarial situation with Whitney); or (ii) exclude the Subsidiaries from bankruptcy filings and make an agreement with Whitney for the right of the Company to use its cash collateral, maintain borrowing under the Line of Credit and to allow the Subsidiaries to continue with normal business operations, with Whitney forbearing from exercising its rights under its notice of default as against the

GAMDE: 2194758

Page 7 of 18

14-51580 - #18  File 12/26/14  Enter 12/26/14 12:59:44  Main Document  Pg 7 of 18

Subsidiaries as regards the First and Second Applications for Receiver (with Whitney reserving all other rights under the Secured Credit Facility) ("Alternative 2"). The Company chose the Alternative 2 as being the least costly approach and the best method for preserving the possibility of maintaining its banking relationship with Whitney, which the Company believes was impeccable before the receivership filings that jeopardized the future of the Company and its Subsidiaries and damaged (hopefully short term) the relationship with Whitney.

21. Because the Line of Credit portion of the Secured Credit Facility employs the enterprise-wide ZBA and sweep mechanisms, the right to use cash collateral and the authority to maintain financing under the Line of Credit are mutually dependent, as described herein and in the Cash Management Motion. The Company therefore requires both the authority to use its cash collateral and the authority to obtain/continue financing under the Line of Credit to meet cash needs. The Line of Credit is particularly useful, if not necessary, to allow the Company to fund the purchases of large shipments of limestone aggregate from its suppliers, under supply contracts (for example, the Company purchases on average 3 ships of limestone aggregate from Vulcan Construction materials, L.P. ("Vulcan") per month, particularly during the months of November through January when the Company builds its inventory to be able to meet demand once winter weather begins to relent, allowing construction projects serviced by the Company to pick up speed. The ability to draw upon the Line of Credit allows the Company to maintain its good pricing terms with Vulcan and other suppliers and affords it the ability to maintain its competitive edge within the area of its business footprint. As was the case prepetition, the Company intends to use its cash collateral and the proceeds of the Secured Credit Facility to fund the payment of operating expenses incurred on and after the Petition Date (and pursuant to other motions to be filed to fund certain critical pre-petition amounts due (to avoid, for example, losing

GAMDE: 2194758

Page 8 of 18

14-51580 - #18  File 12/26/14  Enter 12/26/14 12:59:44  Main Document  Pg 8 of 18

suppliers, section 503(b)(9) claims and to cure defaults under executory contracts created only by the fact of the filing of this Case)). The Company needs immediate access to the Secured Credit Facility and use of its cash collateral to assure continuity of its business operations. If the Company is unable to continue the financing under the Secured Credit Facility and the use of cash collateral, the ability of the Company to effectively reorganize will be jeopardized. Further, the Company submits that the use of its business judgment in choosing Alternative 2 should be approved by the Court as the most advantageous and least adversarial method of proceeding. While the Company possibly could obtain the right to use cash collateral (along with other debtors once filed) after dueling with Whitney, the proposal submitted herewith is superior as it affords the Company and its subsidiaries the wherewithal to maintain operations as currently configured and continue to reap the benefits of its excellent pricing structure of materials purchases.

### Port Aggregates Seeks Authority to Obtain Post-Petition Financing

22. The Company has determined in the exercise of its sound business judgment that it needs and should maintain the Secured Credit Facility as a post-petition Secured Credit Facility (referred to herein as the "Post-Petition Secured Credit Facility"). Given the indisputable need for post-petition financing and the commencement of the State Court Litigation that precipitated the need to seek immediate relief under the Bankruptcy Code in order to protect the going concern value of the Company's businesses and assets, the Company, as noted, approached Whitney Bank to discuss continuing the Secured Credit Facility as post-petition financing, via Alternative 2. Following good faith negotiations, the Company reached an agreement with Whitney Bank regarding maintenance of the Secured Credit Facility on its

prepetition terms (in accordance with the agreements set forth herein) and extending it as the Post-Petition Secured Credit Facility (in accordance with the agreements set forth herein).

23. The Company believes that the Post-Petition Secured Credit Facility represents the best, if not only source, of post-petition financing available to it at this time. It did not have time to seek or negotiate alternative debtor-in-possession financing, and believes that any such efforts would have been fruitless, given the secured position of Whitney and the willingness of Whitney to allow the Company to maintain the Line of Credit and to forbear from enforcing its rights against the Subsidiaries (with Whitney waiving no rights but maintaining all rights under its notice of default, to reiterate such default in the event of other default(s) by the Company or any of the Subsidiaries). Without access to the Post-Petition Secured Credit Facility, the Company would be unable to continue business operations in its present capacity which could jeopardize its ability as a going concern.

24. The Company represents that Whitney Bank is and will be adequately protected with respect to the Secured Credit Facility by the Pre-Petition Collateral and by the agreements herein and within this Motion whereby Whitney Bank will maintain all Pre-Petition Lender Liens and the Company shall grant Whitney Bank with replacement liens and the maintenance of and lien rights on post-petition generated property that would otherwise be defined as Pre-Petition Collateral under the Secured Credit Facility. Therefore, as an initial matter, adequate protection provide herein will, along with the proposed Post-Petition Secured Credit Facility, provide Whitney Bank with adequate protection of its Pre-Petition Lender Lien upon the Pre-Petition Collateral. The Company has thus met this requirement of Bankruptcy Code § 364(d).

25. Under the Post-Petition Secured Credit Facility proposed herein, (i) the Company (and the Subsidiaries) will maintain the current ZBA sweep account structure, (ii) funding will

be opened up through the current Line of Credit,[5] (iii) the funding under the Line of Credit post-petition will be secured by any and all post-petition generated property that would fall into the definition/description of collateral under the Secured Credit Facility, (iv) the current system of due to/due from accounting entries will be used to maintain the accurate balances among the entities, (v) Whitney will forbear from exercising its rights under is prior notice of default as regards the First and Second Applications for Receiver or as might exist as a result of the Company filing this Case, against the Subsidiaries unless and until there is a post-petition default by the Company or a Subsidiary (with Whitney waiving no rights but maintaining all rights under its notice of default, to reiterate such default in the event of other default(s) by the Company or any of the Subsidiaries), (vi) Whitney will be authorized to apply the swept funds to the outstanding Line of Credit balance on a daily basis, including the amount due as of the commencement of this Case, thereby creating more availability under the Line of Credit, (vii) neither this Motion nor the order approving this Motion (on interim or final basis) will affect the liability of any guarantor under any guaranty agreement, and (viii) all reporting and other requirements under the Secured Credit Facility will be maintained.

26. Further, Whitney Bank shall be granted a first priority lien and security interest in, to and upon any accounts, work-in-progress, inventory or other collateral as described within and/or granted under the Secured Credit Facility that might be generated post-petition, all such post-petition property to be deemed Post-Petition Collateral subject to the Post-Petition Lien under and securing the Post-Petition Secured Facility, which shall be maintained and continued under the Post-Petition Secured Facility to the same extent and under the same terms as exist under and in accordance with the terms of the Secured Credit Facility. Any extensions of credit

---

[5] The Company and Whitney Bank agree even if the Line of Credit and Post-Petition Secured Credit Facility provide otherwise, the Company will fund ACH transactions with prior funding through draws under the Line of Credit and/or through deposits on-hand.

GAMDE: 2194758

Page 11 of 18

14-51580 - #18  File 12/26/14  Enter 12/26/14 12:59:44  Main Document  Pg 11 of 18

under the Post-Petition Secured Credit Facility shall be secured by both the Pre-Petition Collateral and the Post-Petition Collateral, without the necessity of any further collateral or security filings by Whitney Bank, with all filings creating the Pre-Petition Liens to constitute perfection of the Post-Petition Liens in, to and upon the Pre and Post-Petition Collateral.

27. Further, despite the fact that the Company submits that the value of the Pre-Petition and Post-Petition Collateral far exceeds the amount due under the Term Loans and the Line of Credit, or that will become due under the Post-Petition Secured Credit Facility (by several million dollars), Whitney has demanded and shall be granted a super-priority administrative claim under Section 364(c)(1) of the Bankruptcy Code to the extent the Pre-Petition Collateral and the Post-Petition Collateral are insufficient to cover the amounts due under Secured Credit Facility and the Post-Petition Secured Credit Facility.

28. Finally, notwithstanding that the Line of Credit was renewed prior to commencement of the Case until August 2015, the Company and Whitney agree that the term of the Line of Credit under the Post-Petition Secured Credit Facility shall be until June 30, 2015, unless extended by written extension. Additionally, events of default under the Secured Credit Facility and the Post-Petition Secured Credit Facility shall include (i) the appointment of a trustee in this Case, (ii) the dismissal of this Case or conversion of this Case to one under chapter 7, (iii) relief granted for the Plaintiffs to proceed against the Company within the State Court Litigation, and (iv) the making by the Company of any distributions to shareholders on account of their ownership for any reason, including without limitation, the payment of income taxes without the written consent of Whitney and approval by this Court.

GAMDE: 2194758

Page 12 of 18

14-51580 - #18  File 12/26/14  Enter 12/26/14 12:59:44  Main Document  Pg 12 of 18

## Port Aggregates Seeks Authority to Use Cash Collateral

29. As mentioned, the Company seeks (a) authorization to use its cash collateral in accordance with the terms and conditions set forth herein and in accordance with the proposed Interim Budget a copy of which is attached hereto as **Exhibit "B"**;[6][7] (b) authority to use Cash Collateral on a final basis in accordance with a proposed Final Budget[8] and Final Order; and (c) granting of adequate protection to Whitney Bank as regards the Pre-Petition Collateral pursuant to Bankruptcy Code §§ 361 and 363(c), as described herein, to the extent that Whitney Bank held the Pre-Petition Lender Lien on the Pre-Petition Collateral, including without limitation cash collateral or the proceeds of collateral that would be cash collateral.

30. As noted, the Company has an immediate need to use cash collateral, including cash proceeds, to continue the operation of its business and to preserve the value of the business as a going concern. Without such funds, the Company will not be able to pay costs and expenses, including, but not limited to, wages, salaries, rent, professional fees, and general and administrative operating expenses that arise in the administration of this Case and in the ordinary course of the Company's businesses.

31. The Company must be able to use cash collateral to continue its business operations on an uninterrupted basis. The Company requests interim authorization to use cash collateral in accordance with the terms and conditions set forth herein and in accordance with the

---

[6] Exhibit B is prepared on a consolidated monthly basis, as that snap shot is the method of providing the most accurate measure of cash position. Also, Exhibit B includes projects that were in the works pre-petition (financed, purchases, construction, etc.), showing the cash in/cash out effect of these projects, which will have to be made subject of future motions before this Court. Finally, Exhibit B is designed to give the cash position and needs without the effect of draws under or payments upon the Line of Credit, to provide the Court and parties with a picture of the ability of the Company and Subsidiaries to maintain operations without the Line of Credit. While the 3 month projection shows a positive cash flow, the need for the Line of Credit is manifest (See January 2015). The Line of Credit addition would not reflect a negative effect upon cash flow, as the extent to which cash is used to reduce the line would be equaled by additional availability under the Line of Credit.

[7] Currently Whitney Bank is limiting its budget approval to one month approvals. The Company will continue to negotiate with Whitney the prospect of a 3-month approval.

[8] The Company is continuing to finalize their proposed Final Budget and Final Order.

proposed Interim Budget until a final order granting further use of cash collateral can be entered. The Company is without sufficient funds to operate for fifteen or more days until a final hearing on this Motion can be held. The Company's inability to timely pay the costs and expenses set forth herein will result in immediate and irreparable harm to the Company. Because the Company's request for interim authorization seeks the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the value of their assets pending a final hearing, their request complies with Bankruptcy Rules 4001(b)(2) and 6003.

32. The Interim Budget itemizes the sources and uses of cash and provides a projection of cash receipts and expenditures. The Interim Budget includes business expenses that are reasonable and necessary and that must be paid in order to continue the Company's businesses until such time as a final hearing on the Motion can be held. The Company proposes that any amounts listed in the Interim Budget that are unused in any month may be carried over and used by the Company in any subsequent month.

33. Therefore, the Company seeks entry of an order pursuant to Bankruptcy Code Sections 361 and 363 and Bankruptcy Rule 4001(b) (a) authorizing the Company to use cash collateral to pay overhead, operating expenses, and ordinary course obligations necessary to maintain and preserve the going-concern value of the Company's assets and business, and to administer the estate, including, but not limited to, using cash collateral to pay (i) any prepetition operating and other expenses approved by the Court, (ii) the post-petition operations of the Company's businesses, and (iii) all costs and expenses arising in connection with the administration of the estate, and (b) granting adequate protection to Whitney Bank.

34. Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or approval from the Court.[9] Whitney Bank has consented to the Company's use of Whitney Bank's cash collateral in conformity with this Motion.

35. For the use of the cash collateral, the Company is granting Whitney Bank replacement Lender Liens (to the extent of any diminution) on Post-Petition Collateral, with such Post-Petition Collateral as well to be Collateral for post-petition advances under the Line of Credit, in accordance with the Post-Petition Secured Credit Facility. The Company anticipates that these replacement liens will adequately protect Whitney Bank for the use of Pre and Post-Petition cash collateral.

36. The Company will also provide Whitney Bank with ample information relating to projected revenues and expenses, actual revenue and expenses, and variances from the Interim Budget and Final Budget, as applicable, as well as reasonable access to, among other things, the Company's management, books, and records, and will provide the reporting required under the Secured Credit Facility. *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P. (In re Stanley Station Assocs., L.P.)*, 140 B.R. 806, 809 (D. Kan. 1992) ("In addition, we believe the request of MBL for 'timely filing of proper monthly operating reports…' falls within the ambit of adequate protection…"); *Sumitomo Trust & Banking Co. v. Holly's, Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 706 (Bankr. W.D. Mich. 1992) (reports required as part of adequate protection).

---

[9] Section 363(c) provides, in relevant part:

  (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
    (A) each entity that has an interest in such cash collateral consents; or
    (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c).

37. The Company submits that the replacement liens and the provision of timely financial reporting will adequately protect Whitney Bank for the use of Pre and Post-Petition cash collateral. Thus, Whitney Bank's interests are adequately protected, and the requirements for adequate protection under Bankruptcy Code §§ 361 and 363 have been satisfied.

38. With respect to the Term Loans, and to secure the agreement of Whitney to forbear its exercise of rights under its notice of default as against the Subsidiaries (on the basis of the First and Second Applications for Receiver) and as might exist as a result of the Company commencing this Case, payments on the Term Loans will be maintained in current status. The Company is not requesting through this Motion the authority of the Company to maintain the Term Loans in a current status, only the authority to have the Company account for any payment toward a Company Term Loan by a Subsidiary as an amount due from the Company to such Subsidiary. Without such an agreed term, Whitney could claim a default as against the Subsidiaries if payments under the Term Loans are not kept current.

39. The Company proposes finally that the final order upon this Motion will reflect that the Company waives any claims against Whitney relating to the Secured Credit Facility or the Pre-Petition Lien or the Pre-Petition Collateral and as well that the deadline for any other party to make any such claim against Whitney shall be 45 days after entry of such final order.

**Interim Relief Requested**

40. The Company submits that interim relief, including use of cash collateral, and including, on an interim basis, use of funding under the Post-Petition Secured Credit Facility and Line of Credit during the interim period and prior to entry of a Final Order, as necessary to avoid immediate and irreparable harm. Accordingly, Port Aggregates request immediate entry of the

Interim Order, pursuant to Bankruptcy Code §§ 363 and 364 and Bankruptcy Rule 4001(b)(2) and (c)(2), pending the final hearing and entry of the Final Order.

## NOTICE

41. Notice of this pleading has been provided by e-mail, facsimile (to the extent possible), or overnight delivery to: (a) the Office of the United States Trustee for the Western District of Louisiana; (b) counsel for Whitney Bank; (c) Port Aggregates twenty (20) largest unsecured creditors on a consolidated basis; (d) counsel for the Plaintiffs in the State Court Litigation; and (e) the Port Aggregates Board of Directors.

## PRAYER

Port Aggregates respectfully request that the Court grant the relief requested herein and such other and further relief to which they may be justly entitled.

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM, DUPLANTIS & EAGAN, LLC**

By: /s/ **Louis M. Phillips**
Louis M. Phillips (La. Bar No. 10505)
Peter A. Kopfinger (La. Bar No. 20904)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: pkopfinger@gordonarata.com

AND

Gerald H. Schiff (La. Bar No. 11775)
Armistead M. Long (La. Bar No. 33949)
400 East Kaliste Saloom Road, Suite 4200
Lafayette, Louisiana 70508
Email: gschiff@gordonarata.com
Email: along@gordonarata.com
Phone: (337) 237-0132

AND

Patrick "Rick" M. Shelby
(La. Bar No. 31963)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Email: pshelby@gordonarata.com
Telephone: (504) 582-1111

*Proposed Attorneys for Port Aggregates, Inc.*

GAMDE: 2194758